Nos. 2013-1011, -1029, -1376

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

PROMEGA CORPORATION,

*Plaintiff-Cross Appellant*,

and

MAX-PLANCK-GESELLSCHAFT ZUR FORDERUNG DER WISSENSCHAFTEN E.V.,

*Plaintiff,*

v.

LIFE TECHNOLOGIES CORPORATION,
INVITROGEN IP HOLDINGS, INC.,
and APPLIED BIOSYSTEMS, LLC,

*Defendants-Appellants*.

Appeals from the United States District Court for the Western District of Wisconsin in case no. 10-CV-00281, Senior Judge Barbara B. Crabb.

## NON-CONFIDENTIAL REPLY BRIEF OF PLAINTIFF-CROSS APPELLANT PROMEGA CORPORATION

MARK C. FLEMING
PROSHANTO MUKHERJI
ERIC F. FLETCHER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

SETH P. WAXMAN
THOMAS G. SAUNDERS
DINA B. MISHRA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

October 28, 2013

# CERTIFICATE OF INTEREST

Counsel for Promega Corporation certifies the following:

1. The full name of every party or amicus represented by us is:

>   Promega Corporation

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

>   Promega Corporation

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

>   None

4. The names of all law firms and the partners or associates who appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this Court are:

>   WILMER CUTLER PICKERING HALE AND DORR LLP:  Seth P. Waxman; Mark C. Fleming; Thomas G. Saunders; Dina B. Mishra; Proshanto Mukherji; Eric F. Fletcher

>   LAW OFFICES OF SUSAN R. PODOLSKY: Susan R. Podolsky

>   MEDLEN & CARROLL LLP: Peter G. Carroll

>   TROUPIS LAW OFFICE, LLC: James R. Troupis; Sarah E. Troupis; Brandon M. Lewis; Stewart W. Karge

>   MICHAEL BEST & FRIEDRICH, LLP: Ian A. J. Pitz; Miriam S. Fleming; Nathan L. Moenck; S. Edward Sarskas

Dated:  October 28, 2013          */s/ Seth P. Waxman*
                                  Seth P. Waxman

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ..............................................................................1

ARGUMENT ....................................................................................3

I.   AT A MINIMUM, PROMEGA IS ENTITLED TO A NEW TRIAL ON DAMAGES ..................................................................................3

    A.   The District Court's Sole Reason For Denying Promega A New Trial Conflicts With Rule 50 And Binding Precedent .........................3

    B.   Promega Is Entitled To A New Trial Regardless Of How This Court Interprets Section 271(f)(1) ..........................................................4

        1.   When one of multiple damages theories is deemed invalid, the remedy is a remittitur or a new trial ........................4

        2.   Promega presented extensive evidence of Section 271(a) damages ...................................................................................6

    C.   Life's Forfeiture Argument Is Meritless ............................................10

II.   PROMEGA IS ENTITLED TO A RESTORED INFRINGEMENT FINDING, OR AT LEAST TO A NEW TRIAL ON INFRINGEMENT .............................................13

III.   THE JMOL ORDER MUST BE REVERSED BECAUSE THE DISTRICT COURT ERRED IN INTERPRETING SECTION 271(F)(1) ......................................15

    A.   Section 271(f)(1) Liability Does Not Require The Involvement Of A Third Party ...................................................................................16

    B.   Section 271(f)(1) Liability Does Not Require That At Least Two Components Be Supplied From The United States ....................21

    C.   Even If Multiple U.S.-Supplied Components Were Required, Promega Would Be Entitled To A New Trial On The Kits For Which Life Concededly Supplied Multiple Components ...................25

IV.   THE DISTRICT COURT PROPERLY ALLOCATED THE BURDEN OF PROOF
      ON LICENSING ................................................................................26

CONCLUSION ........................................................................................30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 9, 25, and 26 contains or would reveal confidential sales information that was designated confidential by Life.

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
  692 F.3d 1301 (Fed. Cir. 2012) (en banc) ........................................17, 20, 21

*Bluebonnet Savings Bank, F.S.B. v. United States*,
  266 F.3d 1348 (Fed. Cir. 2001) ....................................................................10

*Bourne v. Walt Disney Co.*,
  68 F.3d 621 (2d Cir. 1995) ......................................................................27, 28

*Campbell v. United States*,
  365 U.S. 85 (1961)........................................................................................28

*Computing Scale Co. v. Toledo Computing Scale Co.*,
  279 F. 648 (7th Cir. 1921) ...........................................................................29

*Davis v. Michigan Department of Treasury*,
  489 U.S. 803 (1989)......................................................................................19

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518 (1972)................................................................................18, 19

*Dow Chemical Co. v. Mee Industries, Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003) .....................................................................7

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) ....................................................................29

*Evans Cooling Systems, Inc. v. GMC*,
  125 F.3d 1448 (Fed. Cir. 1997) ....................................................................24

*Firestone Tire & Rubber Co. v. Pearson*,
  769 F.2d 1471 (10th Cir. 1985) .....................................................................9

*Hetzel v. Prince William County*,
  523 U.S. 208 (1998)........................................................................................8

*Huff v. Sheahan*,
  493 F.3d 893 (7th Cir. 2007) .........................................................................4

*Intel Corp. v. ITC*,
    946 F.2d 821 (Fed. Cir. 1991) ....................................................27, 28

*Lindahl v. Office of Personnel Management*,
    776 F.2d 276 (Fed. Cir. 1985) ...............................................28

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ...............................................14

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001) ...............................................11

*MCI Communications Corp. v. American Telephone & Telegraph Co.*,
    708 F.2d 1081 (7th Cir. 1983) ...............................................5

*Memphis Community School District v. Stachura*,
    477 U.S. 299 (1986)........................................................4, 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)........................................................20

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2000)........................................................18, 19, 24

*Monsanto Co. v. Mycogen Plant Science, Inc.*,
    261 F.3d 1356 (Fed. Cir. 2001) ...............................................7

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) ...............................................12

*Network Publications, Inc. v. Ellis Graphics Corp.*,
    959 F.2d 212 (11th Cir. 1992) ...............................................8, 9

*Pacific Operators Offshore, LLP v. Valladolid*,
    132 S. Ct. 680 (2012)........................................................24

*Paper Converting Machine Co. v. Magna-Graphics Corp.*,
    745 F.2d 11 (Fed. Cir. 1984) ...............................................30

*Pennzoil Exploration & Production Co. v. Oxy USA Inc.*,
    1996 WL 595608 (5th Cir. 1996) ...............................................12

*Poly-Am., L.P. v. GSE Lining Tech., Inc.*,
  383 F.3d 1303 (Fed. Cir. 2004) ........................................................5

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013) .................................................5, 15

*Quaker City Gear Works, Inc. v. Skil Corp.*,
  747 F.2d 1446 (Fed. Cir. 1984) ......................................................15

*Rockwell International Corp. v. United States*,
  31 Fed. Cl. 70 (Fed. Cl. 1994) ......................................................28

*Sandra T.E. v. South Berwyn School District 100*,
  600 F.3d 612 (7th Cir. 2010) ...........................................................4

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991) ........................................................5

*T.D. Williamson, Inc. v. Laymon*,
  723 F. Supp. 587 (N.D. Okla. 1989) ...............................................18

*Transunion Intelligence LLC v. Search America, Inc.*,
  2013 WL 656616 (D. Minn. Feb. 22, 2013)....................................21

*Verizon Services Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ........................................................5

## STATUTES AND RULES

1 U.S.C. § 1 ..........................................................................................23

35 U.S.C.
  § 271(a) ....................................................................................*passim*
  § 271(b)...........................................................................14, 19, 20
  § 271(f)(1)..................................................................................*passim*
  § 271(f)(2)......................................................................................23, 24

Fed. R. Civ. P.
  8(c)(1) .........................................................................................27
  50(d)...............................................................................................1, 3
  51(b)(1) ........................................................................................12, 13

## LEGISLATIVE MATERIALS

92 Cong. Rec. 4935 (1946) ........................................................17

Section-By-Section Analysis:  Patent Law Amendments of 1984,
    1984 U.S.C.C.A.N. 5827 ...........................................18

S. Rep. No. 98-663 (1984) .....................................................19

## OTHER AUTHORITIES

Charlotte Brontë, *Jane Eyre*
    (Simon & Schuster enriched classic ed. 2009) (1847) .................17

*Oxford English Dictionary* (2d ed. 1998) ................................17

9C Wright, Charles Alan et al., *Federal Practice and Procedure*
    § 2552 (3d ed. 2012) ...........................................13

# INTRODUCTION

The district court gave only one reason for denying Promega a new trial: It believed that Promega should have presented its new trial arguments in opposition to Life's JMOL motion. *See* A2365-2366. That ruling directly contradicted Federal Rule of Civil Procedure 50(d) and Supreme Court precedent, which avoid premature and often unnecessary briefing by allowing a verdict winner to raise its new trial arguments after JMOL is entered against it. *See* Promega Br. 33-35. The court did not even acknowledge, let alone distinguish, this binding authority cited in Promega's motion. A2365-2366; A9313-9314; A9336-9338. Nor does Life offer any authority to defend the sole ground for the court's decision.

Unable to defend the decision as written, Life presents an alternative theory of forfeiture based on the premise that Promega never sought damages under Section 271(a). Life's argument, however, is wrong on the facts and wrong on the law. Far from pursuing an "all-or-nothing" strategy, Promega requested that the jury's equivalent of a general verdict on Life's sales include kits "made, used or sold within the United States" (A2488), and the court gave an instruction to that effect (A189; A2288). Promega also introduced extensive evidence of U.S. sales, including detailed spreadsheets from Life's own records that Life does not dispute quantify thousands of U.S. sales of the accused products. Life's novel argument that this evidence of damages was *too comprehensive* and *too precise* hardly

1

justifies denying Promega a new trial; indeed, proof of *any* amount of U.S. sales entitles Promega to choose between a remittitur and a new trial. Nor do Life's out-of-context characterizations of Promega's trial strategy warrant any deviation from the rule that when one basis for a combined damages verdict is rejected following trial, the remedy is a new trial.

The only "all-or-nothing" theory presented in this case is the false choice Life offers between affirming every dollar of damages awarded by the jury and handing Life a windfall judgment of zero damages. The Court should reverse the district court's erroneous interpretations of Section 271(f)(1) and reinstate the jury's verdict, thereby closing the nonstatutory loopholes that the district court created. The Court should also restore the judgment of infringement. But failing that, Promega is entitled to at least a new trial on Section 271(a) sales and sales of the kits for which Life concededly supplied multiple components from the United States. Anything less would be a miscarriage of justice. Life conceded that it sold infringing kits and that Promega is "entitled to be compensated for that infringement." A5127:14-19; *see also* A2313; A9296. Life was right on both points, Promega proved as much at trial, and it is now up to this Court to ensure that the district court's errors do not strip Promega of its right to compensation for Life's years of willful infringement.

## ARGUMENT

**I.   AT A MINIMUM, PROMEGA IS ENTITLED TO A NEW TRIAL ON DAMAGES**

**A.   The District Court's Sole Reason For Denying Promega A New Trial Conflicts With Rule 50 And Binding Precedent**

The district court denied Promega a new trial based solely on its view that Promega should have presented its new trial arguments in opposing Life's JMOL motion.  A2365-2366.  As Promega demonstrated (Promega Br. 33-35), that holding conflicts with Federal Rule of Civil Procedure 50(d) and binding precedent—all of which the court ignored.  Life offers no substantive defense of the court's analysis.  Rather, without citing the court's opinion, Life argues that the court "did not ... reject Promega's motion because it was untimely," but considered it "on the merits" and rejected Promega's "damages theory" as "untimely."  Life Reply 38 (emphasis omitted).  Life's belated attempt to rewrite the court's opinion only reinforces the opinion's flaws.

The court made clear that it was denying a new trial because Promega did not present its new trial arguments at JMOL.  In its JMOL order, the court reasoned that "because plaintiff did not seek a new trial on damages in the event the court reached th[e] conclusion" that the entire award could not be upheld, "the issue is waived."  A2353.  When Promega later brought its separate new-trial motion, the court again found waiver because, at JMOL, "[p]laintiff did not argue in the alternative that … the trial record was sufficient to support a lesser damages

3

award." A2365 (emphasis omitted). "If plaintiff believed that the evidence at trial could support a lesser damages award," the court wrote, "it could have and should have raised that issue in response to defendants' Rule 50 motion." A2366. Neither opinion addressed the merits or held that, apart from the perceived failure in Promega's JMOL briefing, there was any inconsistency between Promega's new trial motion and its damages theories at trial.

Life argues that new trial decisions are reviewed deferentially, but in this case there is nothing to which this Court could defer. The district court based its decision on an error of law, and "a court categorically abuses its discretion when a decision rests on legal error." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). This Court should therefore consider Promega's new trial arguments *de novo*. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 n.3 (7th Cir. 2010).

### B. Promega Is Entitled To A New Trial Regardless Of How This Court Interprets Section 271(f)(1)

#### 1. When one of multiple damages theories is deemed invalid, the remedy is a remittitur or a new trial

When a plaintiff pursues an aggregate damages award based on multiple theories and one is later deemed invalid, the proper remedy is not to award zero damages, but to permit the plaintiff to choose between a remittitur and a new trial. In *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986), for example, the jury awarded aggregate damages under three theories. The Supreme

4

Court found one of them unsound, but held that "the case *must be* remanded for a new trial on … damages." *Id.* at 312-313 (emphasis added). The Seventh Circuit follows the same rule. *See MCI Commc'ns Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-1168 (7th Cir. 1983) (new damages trial where three of ten liability theories supporting aggregate damages award were unsound). This Court does too. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1309-1310 (Fed. Cir. 2007) ("[W]here the jury render[s] a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages."); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1376-1377 (Fed. Cir. 2013); *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310-1312 (Fed. Cir. 2004); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991).

Indeed, a new trial is required even when the alternative theories are far less developed than here. In *MCI*, the plaintiff presented only aggregate damages figures, so "the jury was left with no way to adjust the amount of damages" when some theories of liability were found wanting. 708 F.2d at 1163. In *Poly-America*, the trial record was insufficient to establish "whether [the plaintiff] ha[d] itself suffered lost profits," separate from those of a related corporation. 383 F.3d at 1311. A new trial was granted in both cases.

5

## 2. Promega presented extensive evidence of Section 271(a) damages

Promega introduced extensive evidence and testimony quantifying Life's U.S. sales. It introduced spreadsheets providing detailed information on thousands of U.S. sales (*e.g.*, A7051-7170; A7170.3; A7170.547-559; A7362-7473; A7632-7744; A7906-8002); regional sales reports quantifying sales to specific U.S. customers (A7701-7008; A7171-7177); testimony from Life employees regarding infringing U.S. sales (A5563:24-5564:4; A6525; A6528-6529; A6532; A6554-6558; A6567-6570; A6579; A6591-6605; A6615-6635; A6639); and testimony from Life customers regarding infringing purchases (A5492:10-16; A5505:18-5506:1; A5605:21-5606:1; A5608:19-5609:19; A5636:13-21; A6537-6542; A6545). Life's own witnesses also testified regarding infringing sales in the United States and quantified some of those sales for the jury. A5978:19-25; A5986:20-23; A5987:2-15; A5989:6-18; A6013:4-6; A6014:23-6015:6; A6015:13-17; A6015:20-6016:13. This evidence is more than sufficient to entitle Promega to a new trial regardless of how this Court interprets Section 271(f)(1).

Life makes the novel argument that much of Promega's damages evidence was *too comprehensive* and *too detailed* to prove the amount of U.S. sales without attorney argument or summary testimony. Life Reply 47-50. But Life's speculation regarding the jury's alleged cognitive limitations provides no basis for disregarding Promega's evidence and denying it a new trial.

6

First, Life cites no authority for disregarding evidence based on speculation that some effort might have been required to calculate total damages. There "is no general requirement that a party necessarily provide explanatory argument linking the evidence to each of the various elements of a legal theory." *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1367 (Fed. Cir. 2001). Nor does a jury require special instruction on how to compute damages. *See, e.g.*, *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-1382 (Fed. Cir. 2003) ("[E]xpert testimony is not necessary to the award of damages[.]").

Second, even if it were the relevant inquiry, there is no reason to doubt that the jury could have calculated U.S. sales from the spreadsheets Promega introduced. Promega called a Life executive, Guido Sandulli, who testified at length regarding how to read the spreadsheets. A6249:9-6267:10. These exhibits undisputedly break out U.S. sales (A7051-7170; A7362-7473; A7632-7744; A7906-8002), and Sandulli noted the columns showing country information (A6250:23-6251:1; A6259:12-15; A6260:12-13; A6266:3-6). Sandulli also admitted the spreadsheets could be used to calculate accurate sales numbers:

> Q. Okay. So if I added these up for those years, I would actually be able to tell the location of the sale as well as the amount of the sale during that year; is that right?
>
> A. That's what I think was done with the pivot table. You can carve a report from all this raw data to say, show me all the sales that occurred in this country by this pivot code.
>
> Q. But this would provide the accurate information of it?

7

A. Yes.

A6261:16-6262:1.

> Q. STR kits that are the subject of this litigation are contained in that spreadsheet combined with the prior spreadsheets that we have just talked about?
>
> A. Yes. That's my understanding.
>
>    *    *    *
>
> Q. So from these documents, an accurate number could be calculated of those sales, correct?
>
> A. Yes.

A6266:24-6267:10.[1] The reason for letting the jury draw conclusions directly from the spreadsheets rather than marching through them in open court was to accommodate *Life's* confidentiality concerns. *See* A1679:10-1680:9; A6253:2-6254:24.

Third, a new trial is required if the jury could have computed *any* non-zero damages award from the evidence. *See* Promega Br. 36-38. Thus, even if Promega had presented far less evidence regarding Life's U.S. sales, the substitution of the court's zero damages award "cannot be squared with the Seventh Amendment." *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998). Nor can it be squared with the interests of justice. *Network Publ'ns, Inc. v. Ellis Graphics Corp.*, 959 F.2d 212, 213, 215 (11th Cir. 1992) (interests of justice

---

[1]     Life complains that the jury would have had to convert the product numbers on PTX 1312 (A7205-8004) into product names. This was hardly difficult given the exhibits showing the names and numbers. *E.g.*, A7020-7022; A7180-7190.

compelled a new damages trial where "plaintiff suffered some damages" and "[i]f plaintiff failed in proof it was only as to amount"); *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1480 (10th Cir. 1985).[2]

Life does not and cannot dispute that there is sufficient evidence from which a jury easily could find at least *some* substantial U.S. sales of the accused kits. Two Life sales representatives testified that Life sold approximately $35.5 million of STR kits in nine U.S. states during the damages period. A5989:6-18; A6014:23-6015:6. Other witnesses also testified about specific U.S. sales. A6122:13-18 ($1.6 million); A5635:15-5636:21 (approximately $350,000). And one of the tables in PTX 792 listed total U.S. sales by kit in 2007 in an immediately accessible fashion:



---

[2]   Life's attempt to recharacterize *Network Publications* (Reply 50-51) is refuted by the opinion's own listed reasons for granting a new trial, including that, as here, "clearly plaintiff suffered some damages" and the evidence showed "some damages." 959 F.2d at 215. The third reason, upon which Life focuses—that the judge did not "consider[] … that he had the discretionary power, on his own, to grant a new trial," *id.*—also applies because the court here legally erred in ruling that Promega's new trial argument was waived. *See supra* Section I.A.

CONFIDENTIAL MATERIAL DELETED

A7049 (showing header and relevant rows); *see also* A6259:12-15 ("Q. Okay.

And this pivot table, by year by country, this would be the total amount of these

STR products in those countries that year?  A. Yeah, that's my understanding[.]").

Fourth, Life ignores the rule that the amount of damages need not "be

ascertainable with absolute exactness or mathematical precision."  *Bluebonnet Sav.*

*Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001).  The damages

evidence that Promega presented was remarkably precise, but less detailed

evidence would have been more than sufficient to support a damages award for

Life's U.S. sales and would, at least, entitle Promega to a new trial.

### C.    Life's Forfeiture Argument Is Meritless

Life's argument that Promega forfeited its right to a new trial is both

factually and legally unsound.  Far from abandoning its claim to damages under

Section 271(a), Promega requested that the jury be told to include damages for kits

"made, used or sold within the United States" (A2488) and the court instructed the

jury to that effect (A189; A2288).  As discussed above (p. 6), Promega also

presented extensive testimony and evidence quantifying U.S. sales.

Life's contention that Promega prevented the jury from considering U.S.

sales ignores all this evidence and the actual conduct of the trial.  Promega's

objection to a question about U.S. sales arose at a time when it appeared Life had

conceded that the worldwide sales amount was the relevant figure to be considered

by the jury.  At that stage, Life was *opposing* the introduction of specific sales data as "not relevant to any issue before the jury" because there had been "a stipulation as to the total amount of sales of STR kits."  A5572:11-23; *see* A5065:15-5073:21; A6127:6-6130:3; A6184:12-6191:17.  But Life later reversed course and began arguing that Promega was required to quantify specific infringing sales—a change in course that surprised the district court, which correctly pointed out that "when there was an effort to get into that, the agreement was that we didn't need to." A6187:12-18.  Nevertheless, the court concluded that there had been "miscommunication between counsel, and that included me."  A6190:5-6.  Once this "miscommunication" was cleared up, Promega certainly did not oppose discussion of U.S. sales; on the contrary, it supplemented the record with additional evidence quantifying Life's U.S. sales.  *See* Promega Br. 14-18.

Life's arguments regarding the combination of damages under Sections 271(a) and 271(f)(1) also fail.  Promega pursued two damages theories: one under Section 271(a), the other under Section 271(f)(1).  It merely sought an aggregate damages *award*, akin to a general verdict, on the amount of damages.  This was entirely proper, and Life tellingly cites no support for its argument that Promega was required to request a special verdict on individual damages categories.  *See McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1355 (Fed. Cir. 2001) (the "law does not compel the use of special verdicts" at all).  Seeking aggregate damages for

11

multiple theories of liability is not an "all-or-nothing theory" that forfeits the right to damages under each theory individually.[3]

Life's argument that Promega needed to request an alternative damages award in its closing statement also misses the mark. Promega's closing argument did not disclaim a partial damages award; it simply argued that—because Question 2 on the special verdict form included damages under both Sections 271(a) and 271(f)(1)—answering it "becomes very straightforward" because the evidence permitted the jury to award damages for worldwide sales. A6419:13. The jury agreed. But even if it had not, Promega had ensured that the jury was instructed on U.S. sales and had received extensive testimony and evidence quantifying those sales.

Moreover, in crafting its instructions, the district court rejected Life's interpretation of Section 271(f)(1), under which no Section 271(f)(1) damages would have been available. A6344:16-6345:2; A189:11-21; A2427. Promega was entitled to tailor its arguments to these jury instructions. Federal Rule of Civil

---

[3]    All but two of Life's cited cases (Reply 45 n.16) involved parties that dropped actual theories at trial—*e.g.*, the statute of limitations, a due-process challenge, the applicability of a new contractual provision—rather than parties simply seeking an aggregate damages award. The remaining two cases are even less relevant. The unpublished decision in *Pennzoil Exploration & Prod. Co. v. Oxy USA Inc.*, 1996 WL 595608, at *3 (5th Cir. 1996), upheld a *jury award* of zero damages because the jury could have disbelieved all of the plaintiff's damages evidence, and *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986), refused to overturn a stipulation.

Procedure 51(b)(1), for example, "requires the court to inform counsel of its proposed action on the requested instructions before counsel make their arguments to the jury," so as "to permit the lawyers to argue ... *within the applicable law as the court will give it to the jury.*" 9C Wright et al., *Federal Practice and Procedure* § 2552 (3d ed. 2012) (emphasis added). A contrary rule would be unworkable. A trial canvassing multiple damages figures to guard against possible post-trial reinterpretations of the law would be excessively long and endlessly confusing.

## II.  PROMEGA IS ENTITLED TO A RESTORED INFRINGEMENT FINDING, OR AT LEAST TO A NEW TRIAL ON INFRINGEMENT

Life makes only a cursory response to Promega's argument for a restored infringement finding or, at a minimum, a new trial on infringement. Life does not address the undeniable fact that Promega moved "for summary judgment that the Defendants[] made, used, sold, or offered for sale" the accused products (A688); that Promega supported this argument with undisputed facts showing unlicensed uses by Life's U.S. customers (A693-702; A1443-1459; A1542-1544); that Life's opening argument at trial conceded there "was technically an infringement" (A5127:14-19); that the parties repeatedly agreed that only willfulness and damages—and not infringement—were at issue at trial (A5112:2-6; A5167:21-25; A5103:9-20; A5107:17-19); or that the court refused to give a separate infringement instruction because "the infringement question has been answered"

(A6310:20-25) and told the jury "I have found previously that all the STR kits that defendants sold infringed plaintiff's patents" (A2287).[4]

Life's other arguments all fail. Life's 50(a) motion challenged Promega's proof as to "which products/sales are *eligib[le] for damages* under Section 271(a)." A2150:23-2151:3 (emphasis added). In other words, it challenged whether Promega had adequately *quantified damages*, not whether there had been any infringing sales at all. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("[A] finding of infringement can rest on as little as one instance" of infringement). Indeed, even Life's post-trial JMOL motion was directed to perceived insufficiencies in the *damages* evidence and conceded that there had been *infringement* in the United States. A2313 ("[I]t is undisputed that some portion of the stipulated sales figure represents sales of STR kits in the United States."); *see also* A9296.

Life is also wrong that it would be impossible to craft an injunction of proper scope. Even if Section 271(f)(1) were found not to apply, a narrowly tailored injunction can be crafted under Section 271(a). Summary judgment has

---

[4]    The court's refusal to grant summary judgment of infringement on the asserted *method* claims also shows that the existence of infringing *acts* was decided then. The method claims "read on" the same accused kits and implicate the same license as the apparatus claims. Yet the court denied summary judgment on them precisely because it found that (unlike with the apparatus claims) the necessary infringing *acts*—there, acts of inducement under Section 271(b)—had not been shown. A26.

established which kits cannot be made, used, sold, offered for sale in, or imported into the United States, along with specific uses which are unlicensed. The injunction should be tailored to those unlicensed acts.

Finally, Life argues, without citation, that when the entire scope of a jury award is not upheld, all *implicit* jury findings are also set aside, even if they are supported by substantial evidence. Life Reply 56. That is wrong. A "court [is not] free to make a specific finding … which *overrule[s]* an implicit and inherent finding of the jury within a broader question." *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453 (Fed. Cir. 1984). Thus, in *Power Integrations*, this Court vacated a jury's "general verdict … [on] damages," 711 F.3d at 1376, but still "affirm[ed] the … implicit finding … [of] direct infringement" on which it rested, *id.* at 1377.

## III. THE JMOL ORDER MUST BE REVERSED BECAUSE THE DISTRICT COURT ERRED IN INTERPRETING SECTION 271(F)(1)

The district court's reading of Section 271(f)(1) imposes two *per se* rules that create new loopholes for evading liability: first, by requiring involvement of a third party, and second, by requiring supply of multiple components from the United States. This Court has not directly addressed either issue and should use this opportunity to clarify that these rules—which even the district court admitted in part "make[] little sense" (A2350)—conflict with Section 271(f)(1)'s text, context, and purpose.

15

## A.     Section 271(f)(1) Liability Does Not Require The Involvement Of A Third Party

The district court's erroneous legal conclusion that Section 271(f)(1) "require[s] the involvement of a third party"—that is, of an unrelated party that is "distinct from defendants" (A2363-2365)—cannot support JMOL for Life.

As an initial matter, the court offered no reason why supplying components in a manner that actively induces combination by a *separate but related* party— such as a company's foreign division, affiliate, subsidiary, or employee—would not qualify for Section 271(f)(1) liability.  Contrary to Life's allegation (Reply 26), this argument is not "new."  *See* A9251; A9316-9317; A9349-9350.  Moreover, there was ample evidence to show Life supplied components from the United States in a manner that actively induced the combination of the invention's components abroad by its foreign divisions and employees.  *See, e.g.*, A6277:3-4; A6278:8-10; A6279:3-6283:3; A6289:14; A6286:2-3; A6270:14-6272:2; A6273:7-10; A6284:24-6285:8.  The district court's analysis, which was based solely on the faulty grammatical reasoning that a person cannot "induce[] himself" and must instead induce "another" (A2348-2349), does not negate this basis for the jury to have found for Promega.  Therefore, this is not only a "live issue" (Life Reply 26), but also one that requires reversal regardless of whether Section 271(f)(1) applies to a person's inducement of his own combination of components abroad.

16

Even if this case *did* concern only a person's inducement of his own acts, reversal would still be required.  Life simply repeats the district court's flawed analysis.  But Section 271(f)(1)'s text, context, and purpose all establish liability when a company, through U.S. component supply, procures its own assembly of a patented invention overseas.

Section 271(f)(1) requires that the components be supplied "in such manner as to actively induce *the combination*" of the invention's components (emphasis added); unlike other provisions in Section 271, it does not specify that the combination must be performed by another.  Promega Br. 41.  The best meaning of "induce" in this context is "cause," since the object of the inducement is a process ("combination") rather than a person.  *Id.* at 42.[5]

Moreover, Life never addresses the legislative history showing that Section 271(f)(1) was intended to prevent companies like Life from avoiding liability by procuring assembly abroad, without regard to who performs the assembly.  *See*

---

[5]    Regardless whether "induce" means "influence or persuade" (as preferred by Life) or "cause" (as in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (en banc) (Promega Br. 42)), there is nothing unusual about saying that a person persuaded or induced himself to engage in a course of action.  *E.g.*, Charlotte Brontë, *Jane Eyre* 345 (Simon & Schuster enriched classic ed. 2009) (1847) ("I could not persuade myself to affix them, or to have them affixed."); VII *Oxford English Dictionary* 887 (2d ed. 1998) ("I have the more willingly induced myself to this unequal task[.]"); 92 Cong. Rec. 4935 (1946) (Rep. Crawford) ("I cannot conscientiously induce myself to go along with such a program[.]").

17

Promega Br. 44-46 & n.12.  Life suggests, citing *Microsoft Corp. v. AT&T Corp.*,

550 U.S. 437, 439-440 (2000), that Section 271(f)(1) is limited to the facts of

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972), which happened to

involve foreign buyers.  Life Reply 29-30.  But *Microsoft* made nothing of that

particular fact, and Section 271(f)(1) is no more limited to cases involving foreign

buyers than it is to cases involving "'shrimp deveining machine[s],'" which are

mentioned in the same sentence.  Life Reply 30 (quoting *Microsoft*, 550 U.S. at

457-58); *see also Deepsouth*, 406 U.S. at 520.  Rather, *Microsoft* only contrasted

the physical parts supplied from the United States in *Deepsouth* with the

"intangible set of instructions" and "foreign made copies" involved in *Microsoft*.

550 U.S. at 457-458.  Here, unlike in *Microsoft*, the very "gap in our patent law

[that *Deepsouth*] revealed," *id.* at 457, is present:  Life seeks to avoid liability

under Section 271(a) by supplying physical components from the United States "so

that the assembly of the components may be completed abroad."  1984

U.S.C.C.A.N. 5827, 5828.  In addressing this gap or loophole, it is unreasonable to

think Congress *sub silentio* created another, subsidiary loophole "allowing

infringers to eschew dealing with foreign parties in order to avoid liability."  *T.D.*

*Williamson, Inc. v. Laymon*, 723 F. Supp. 587, 592 (N.D. Okla. 1989).  Even the

district court here admitted such a rule would "make[] little sense."  A2350.

Life's reliance upon the presumption against extraterritoriality is misplaced. *See* Promega Br. 46-47.  In *Microsoft*, the components combined abroad were also made abroad, albeit copied in part from a disk that originated in the United States. 550 U.S. at 452.  In contrast, Life's conduct (physical component supply "in or from the United States") is domestic and directly links each kit to an infringing act in the United States.  Promega's interpretation of Section 271(f)(1) thus would not "'convert[] a single act of supply from the United States into a springboard for liability'" for an unlimited number of downstream copies made abroad, as was the concern in *Microsoft*.  550 U.S. at 456.

Although Life notes that the term "induce" in Section 271(f)(1) was "drawn from" Section 271(b) (Reply 29), Life infers too much from offhand remarks in the Section 271(b) decisions it cites.  Life's cases concern the required *mens rea* for inducement, not the issue here.  Promega Br. 47.  Moreover, their statements about inducing "another" merely reflect that, in light of the complementary relationship between Sections 271(b) and 271(a), Section 271(b) generally *need not* be invoked where the inducer and infringer are the same party.  *Id.*  They do not dictate the meaning of Section 271(f)(1), where *Deepsouth* foreclosed any complementary relationship to Section 271(a)—the very motivation for Section 271(f)(1)'s enactment.  *See* Promega Br. 44-45 (citing S. Rep. No. 98-663, at 2-3 (1984)); *see also Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[W]ords of

19

a statute must be read in their context and with a view to their place in the overall statutory scheme.").[6]

Life's warnings about expanding secondary liability are also beside the point. Life concedes that Section 271(f)(1) imposes liability where a third party performs the combination. As this Court noted in *Akamai*, a party that induces his own performance of an action "is, if anything, more culpable." 692 F.3d at 1309. Promega's interpretation does not expand the outer boundaries of *secondary* liability; it merely avoids the loophole for *more culpable* conduct that Life's interpretation would create.

Life offers no persuasive response to *Akamai*. Although the defendant in *Akamai* performed only some claimed steps itself, *Akamai* emphasized that the "impact on the patentee" is "precisely the same" regardless of who performs the induced acts, and that an inducer who performs some of the acts himself is "more culpable than one who does not perform." 692 F.3d at 1309. The relevant "duty" of avoiding "induc[ing]," according to *Akamai*, is "not to *cause* the acts that constitute" the relevant conduct, *id.* at 1313 (emphasis added)—whether that conduct is "infringement" under Section 271(b) or "the combination" of the

---

[6]     *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), concerned only *contributory* infringement under *copyright* law, which contains no express secondary liability provision, requiring one to be imputed under common-law principles. *Grokster* does not affect the proper interpretation of the Patent Act, let alone Section 271(f)(1).

invention's components abroad under Section 271(f)(1).  That duty is violated

whether the acts are performed by "the defendant itself or someone acting at the

behest of the defendant."  *Transunion Intelligence LLC v. Search Am., Inc.*, 2013

WL 656616, at *3 (D. Minn. Feb. 22, 2013) (applying *Akamai*).

### B.  Section 271(f)(1) Liability Does Not Require That At Least Two Components Be Supplied From The United States

The district court erroneously adopted a *per se* rule that a single U.S.-

supplied component, no matter how substantial to the invention, can never

constitute "a substantial portion of the components of a patented invention."

Promega Br. 48-53.  Section 271(f)(1) does *not* say "all or *at least two* of the

components of a patented invention"; it says "all or *a substantial portion*"

(emphasis added).  What constitutes a "substantial portion" is a factual question

that turns primarily not on component quantity, but on importance to the patented

invention.  Promega Br. 48-50.  Here, Life's own witness conceded that the U.S.-

supplied Taq polymerase is a "main" and "major" component.  Promega Br. 49

(quoting A6290:20-6291:1).

Life's assertion that "such components" in Section 271(f)(1) refers to the

components supplied from the United States, rather than the immediately

preceding phrase ("the components of a patented invention"), is incorrect.  Because

Section 271(f)(1) refers to the "combination of such components outside of the

United States *in a manner that would infringe*" (emphasis added), the combination

21

must be a combination of *all* the invention's components. If "such components" meant only the components from the United States, that set would need to amount to all the invention's components, which would render Section 271(f)(1)'s inclusion of "or a substantial portion" meaningless. Promega Br. 50-51.

Life asserts that "such components" could be combined with other, foreign-supplied components. But Section 271(f)(1) refers to "the combination of such components," indicating the combination of *only* "such" items, not unspecified others left unmentioned. Life also asserts that the first use of "such components" (in the "uncombined in whole or in part" phrase) must refer to only the components from the United States. But that is not so—the phrase "where such components are uncombined in whole or in part" indicates that either all of the invention's components are uncombined ("in whole") or some remain uncombined ("in part") at the time that one or more components are supplied from the United States.

In fact, the very phrase upon which Life focuses—"where such components are uncombined in whole or in part"—shows that Life's interpretation would produce an absurd result. If "such components" meant only the components from the United States, a company like Life could avoid liability under Section 271(f)(1) simply by combining the U.S.-supplied components together before shipping them for further assembly into the invention abroad. Promega Br. 51. In that instance,

22

the components from the United States would not be "uncombined in whole or in part," and hence Section 271(f)(1)—under Life's erroneous interpretation—would not apply. Life responds that combining the U.S.-supplied components into one item before shipping it abroad would not produce a larger "component." But Life's response does not fix the problem with its interpretation because the underlying "components"—if defined as the components supplied from the United States rather than the components of the patented invention—would not be "uncombined in whole or in part."

Life's attempt to contrast Section 271(f)(1) with Section 271(f)(2) on the number of components also misses the mark. Contrary to Life's suggestion, Section 271(f)(2) imposes the "especially designed" standard to compensate for its leniency as compared to Section 271(f)(1) on a *different* dimension, not the quantity of components. Specifically, while Section 271(f)(1) requires that the component supply be "in such manner as to *actively induce*" (emphasis added)— that is, tend to "cause"—the action abroad that would infringe if it occurred in the United States, Section 271(f)(2) requires only that the defendant "*intend[]*" such action (emphasis added).

Nor can the fact that "components" in Section 271(f)(1) is phrased in the plural support the meaning that Life gives it. The Dictionary Act indicates that "words importing the plural include the singular." 1 U.S.C. § 1. Life argues that

the Dictionary Act yields to context. But the inferences that Life draws from the statutory structure (*see* Reply 22, 25) are substantially weakened by the fact that Sections 271(f)(1) and 271(f)(2) each use language that is drawn from and parallels different provisions of Section 271. Promega Br. 51-52, 50 n.13.

Finally, Life falls back on footnotes from *Microsoft*. But *Microsoft* never addressed whether a single, important component could be "a substantial portion." *See* Promega Br. 52-53. Moreover, *Microsoft* expressly stated that the issue was irrelevant to its analysis. 550 U.S. at 454 n.16. Although Life urges the Court to suspend its independent judgment and follow dicta, the Supreme Court has directed the opposite. *See Pacific Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 688 (2012) (refusing to rely upon an "ambiguous comment … made without analysis in dicta" in a prior Supreme Court decision); *see also Evans Cooling Sys., Inc. v. GMC*, 125 F.3d 1448, 1453 (Fed. Cir. 1997) (declining to follow Supreme Court dicta).

Finally, Life's narrow vision of the loophole addressed by Section 271(f)(1) is inconsistent with *Microsoft*'s own acknowledgement that the "substantial portion" language was designed to reach beyond *Deepsouth*. 550 U.S. at 458 n.18. Likewise, Life's discussion of the presumption against extraterritoriality ignores the repeated supply from the United States of a physical component for every infringing kit. *See supra* p. 19.

24

### C. Even If Multiple U.S.-Supplied Components Were Required, Promega Would Be Entitled To A New Trial On The Kits For Which Life Concededly Supplied Multiple Components

This Court should reverse both of the district court's erroneous interpretations of Section 271(f)(1) and restore the jury's verdict. But even under the mistaken multiple-component rule, Promega is entitled to a new trial.

Life supplied multiple components for the Identifiler, Identifiler Direct, and Identifiler Plus Kits from the United States (A6282:15-6283:3; A6284:24-6285:8)—as Life conceded (A2303) and the district court acknowledged (A2359; A2340). Contrary to the court's (A2340) and Life's (Reply 49) suggestions, sales of those kits were fully quantified both in the detailed spreadsheets discussed above and in Life's own royalty reports. PTX 907 offers an example of one such quarterly royalty report:



CONFIDENTIAL MATERIAL DELETED

A7198 (arrows added). Such reports succinctly showed over ████████ in gross

sales of those kits. Promega Br. 53-54 (citing A7180-7186; A7188-7192; A7196-

7204); *see also* A6222:18-21; A6224:20-6225:2. And even that figure is an

underestimate. Promega Br. 54.

Accordingly, even if Section 271(f)(1) required multiple U.S.-supplied

components, Promega would be entitled to a remittitur or a new trial.

## IV. THE DISTRICT COURT PROPERLY ALLOCATED THE BURDEN OF PROOF ON LICENSING

Life raises a contingent new trial argument of its own, contending that the

damages verdict cannot be reinstated because the district court required Life to

apportion between licensed and unlicensed sales as part of the burden on its

affirmative defense. This issue arises only if the Court agrees with Promega on

both Section 271(f)(1) interpretive questions. If the Court does reach this issue, it

should reject Life's position.[7]

The district court was right to place the burden on Life "to show that a

particular sale was protected by the license agreement." A57.[8] As Life concedes,

---

[7] To the extent Life intends its assertion that it retained rights to the Tautz patent for basic research (Reply 8-9) to be another alternative new trial argument, Life has forfeited the argument by failing to develop it on appeal. Regardless, it is meritless for the reasons given by the district court. A25.

[8] To be precise, Promega had the burden to show U.S. sales (Question 2); Life had the burden to show the amount of licensed sales (Question 3); and Promega had the burden to show lost profits on the unlicensed sales (Question 5). A201-204; A2286.

CONFIDENTIAL MATERIAL DELETED

"[a] license defense is an 'affirmative defense.'"  Life Reply 32; *see also* Fed. R.

Civ. P. 8(c)(1) (listing "license" as an affirmative defense).  Nor does Life dispute

the general rule that a party raising an affirmative defense bears the burden of

proof on that defense.  *See Intel Corp. v. ITC*, 946 F.2d 821, 828 (Fed. Cir. 1991).

Life argues, however, that Section 271(a)'s inclusion of the words "without

authority" places the burden on the patent owner to prove that infringing sales are

unlicensed.  Life cites no support, and its position conflicts with its own concession

that "the accused infringer bears the burden of proving the existence of a license."

Life Reply 32.  If the absence of authority were truly an element of infringement,

rather than merely a statutory predicate for Life's affirmative defense, the

defendant would not even have to prove what Life concedes it must (*i.e.*, the

existence of a license), and the plaintiff would bear the burden of proving a

negative.

Life's reliance on *Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995), is

also misplaced.  In the nearly eighteen years since its issuance, *Bourne* has never

been cited by this Court or in any other patent case.  The question in *Bourne* was

whether Disney's use of copyrighted musical compositions was within the scope of

existing licenses.  *Id.* at 631.  Analogizing to a breach-of-contract action, the court

concluded that once Disney proved the licenses' existence, the plaintiff bore the

burden of proving Disney's uses fell outside the licenses' scope.  *Id.* at 630-631.

27

But this ruling had no implication for the damages calculation; in fact, the parties had stipulated to a precise damages award if the uses were deemed unlicensed. *Id.* at 624.

*Bourne*'s shifting of the burden of proof on license scope is highly questionable. *E.g.*, *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 70, 77 (Fed. Cl. 1994) ("[D]efendant has the burden of proof to show the existence of a license *and the scope* of any such license." (emphasis added) (citing *Intel*, 946 F.2d at 828)). In any event, *Bourne* sheds no light on who bears the burden in apportioning specific licensed and unlicensed sales, particularly where the apportionment depends on how the adjudged infringer's customers used the infringing products.

If anything, *Bourne* suggests it would be "sensible" to place the burden on Life as the party to whom the relevant evidence is "readily available." 68 F.3d at 631. It is well established that "the party with the best knowledge of the facts should bear the burden of proof as to those facts." *Lindahl v. OPM*, 776 F.2d 276, 278 (Fed. Cir. 1985); *see also Campbell v. United States*, 365 U.S. 85, 96 (1961) ("[T]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."). Here, the district court found that Life had superior access to the records required to determine whether particular sales were licensed, as the

question turned on how Life's customers used otherwise infringing STR kits.  A56.

Conversely, placing the burden on Promega would result in costly, time-

consuming discovery involving third parties.

Sound policy and fairness further justify placing the burden on Life, given

that Life had already been found to infringe Promega's patents.  Placing the burden

on plaintiffs in such situations would reward defendants for poor recordkeeping,

creating perverse incentives.  The district court had already noted that "[t]he most

obvious way to show [how customers used the accused products] would be with

direct evidence of the customers' actual practices, but apparently plaintiff does not

have such evidence with respect to some of the customers."  A9392.  Promega

lacked this information because Life insisted it was not maintained (A2620-2622),

even though the license required Life to keep it (A5840:24-5841:13).  As the

Seventh Circuit long ago established:

> If a manufacturer, knowing of a patent, decides to chance an
> unlicensed use, he should realize that he may be caught by a final
> decree on the merits and be ordered to respond accordingly; and, so
> realizing, he should be held to the duty of keeping separate and
> accurate records of all his infringing acts; and on his failure to keep
> such records, the court, in measuring the damages on account of his
> trespasses, should resolve all doubts against him.

*Computing Scale Co. v. Toledo Computing Scale Co.*, 279 F. 648, 673 (7th Cir.

1921); *see also DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir.

2006) ("[T]his court will resolve 'any doubts about the amount … against the

infringer.'"); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984) ("[F]undamental principles of justice require us to throw the risk of any uncertainty upon the wrongdoer instead of upon the injured party.").

Here, the burden of proof was properly placed on Life to apportion the sales between licensed and unlicensed uses. Life was presenting an affirmative defense; Life was in far superior position to obtain and maintain the required information; and rewarding an infringer for bad recordkeeping would be plainly bad policy.

## CONCLUSION

The Court should reinstate the infringement judgment and damages award, and remand for consideration of Promega's motions for an injunction, exceptional case finding, and enhanced damages. Alternatively, the Court should restore the infringement judgment and grant a new trial on damages or, at a minimum, grant a new trial on both points.

Respectfully submitted,

/s/ Seth P. Waxman

MARK C. FLEMING
PROSHANTO MUKHERJI
ERIC F. FLETCHER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

SETH P. WAXMAN
THOMAS G. SAUNDERS
DINA B. MISHRA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

Dated: October 28, 2013

# CERTIFICATE OF SERVICE

I certify that I filed this Brief with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served a copy on counsel of record, this 28th day of October, 2013, by the CM/ECF system and electronic mail.


*/s/ Seth P. Waxman*
Seth P. Waxman


| | |
|---|---|
| Law Firm: | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Address: | 1875 Pennsylvania Avenue, NW |
| City, State, ZIP: | Washington, DC 20006 |
| Telephone Number: | (202) 663-6000 |
| E-mail Address: | seth.waxman@wilmerhale.com |

## CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff-Cross Appellant hereby certifies that:

1.      The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(C) because exclusive of the exempted portions it contains 6,985 words as counted by the word processing program used to prepare the brief; and

2.      The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word in a proportionally spaced typeface: Times New Roman, font size 14.

Dated:  October 28, 2013                    */s/ Seth P. Waxman*
                                            Seth P. Waxman